1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
KAREN LaMANTIA,
10                                    NO. CIV. S-01-1933 LKK/GGH

11          Plaintiff,

12     v.                              O R D E R

13  HEWLETT-PACKARD COMPANY
    EMPLOYEE BENEFITS
14  ORGANIZATION INCOME
    PROTECTION PLAN,
15
           Defendant.
16  _____/

17      Plaintiff, Karen LaMantia ("plaintiff"), filed this action

18  against Hewlett-Packard Company Employee Benefits Organization

19  ("defendant") pursuant to the Employee Retirement Income Security

20  Act ("ERISA") to recover benefits provided under an employee income

21  protection plan.  On August 18, 2005 this court granted defendant's

22  motion for summary judgment and plaintiff appealed.   The Ninth

23  Circuit remanded the case in light of its recent decision in Abatie

24  v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006) (en

25  banc).  Pending before the court are supplemental cross-motions for

26  summary judgment addressing Abatie and its impact, if any, on this

1

case.  I decide the motions based on the papers and pleadings filed herein and after oral argument.

## I.

### FACTS & PROCEDURAL HISTORY[1]

The basic facts of this case, as well as the procedural history, are well known to the parties, and, for the most part, undisputed.  However, in the interest of having a clear record, the court includes a detailed review of the necessary facts and procedural history of the case.

**A.   The Plan**

Plaintiff, who held a full-time position as Account Representative in Hewlett-Packard's Customer Support department, was a member of the Hewlett-Packard Company Employee Benefits Organization Income Protection Plan ("Plan").  The Plan was adopted by Hewlett-Packard Company ("HP") to provide its employees with income in the event of certain disabilities.  HP sponsors the plan through the Hewlett-Packard Company Employee Benefits Organization ("the Organization").  The Plan is self-funded by HP, rather than insured through an insurance company, and is administered pursuant to the Administrative Services Contract it has with Voluntary Plan Administrators, Inc. ("VPA"), which acts as the claim administrator for the Plan.

For VPA to approve a claim for Plan benefits, a member must establish that she is "Totally Disabled" as defined under the Plan.

---

[1] Undisputed unless otherwise noted.

1  Administrative Transcript ("AT") at HP00354-00355.[2]   The

2  requirements for Total Disability vary, depending upon whether the

3  member seeks short or long term disability benefits.  Where the

4  member seeks short-term disability ("STD") benefits, Total

5  Disability means that, "following the onset of injury or sickness,

6  the member is continuously unable to perform each and every duty

7  of his or her Usual Occupation."  A member's Usual Occupation is

8  defined as the normal work assigned to the member by HP.  AT at

9  HP00358.  The Plan also provides that a member must be under the

10 care of a licensed physician and be examined at a frequency

11 consistent with the Member's condition.  AT at HP00355.  If a

12 member qualifies, the member is entitled to up to a maximum of 39

13 weeks of STD benefits.

14      By contrast, after the initial 39 week period, where a member

15 seeks long-term disability ("LTD") benefits, Total Disability means

16 that, "the Member is continuously unable to perform any occupation

17 for which he or she is or may become qualified by reason of his or

18 her education, training or experience."  AT at HP00355.  Certain

19 conditions are excluded under the Plan from consideration for LTD

20 benefits.  First, the Plan provides:

21          Any condition diagnosed as, or without regard to its
            designation is equivalent to, (1) attention deficit
22          disorder (ADD), or (2) chronic fatigue syndrome,
            Epstein-Barr Virus, or infectious mononucleosis shall be

23

24      [2] The practice of calling the Plan Administrator's proceeding
    administrative, thus suggesting it is similar to federal
25  administrative proceedings, puts the entire process in a false
    light and may be at least partially responsible for the unusual
26  deference paid to a private company's financial decisions.

1          disregarded in determination of Total Disability
2          . . . .

3  AT at HP00355.  The Plan also provides:

4          [I]n the case of a disability resulting from a nervous
           or mental disorder, the Member shall be considered
5          Totally Disabled only if he or she is confined to a
           hospital or other licensed long-term care facility for
6          the treatment of such disability or has been so confined
           for fourteen (14) or more consecutive days during the
7          preceding three (3) months.

8
9  AT at HP00356.  Under the Plan, an illness is considered a nervous

   or mental disorder if:
10
11         1.    The illness has psychologic or behavioral
           manifestations or results in impairment of mental
12         functioning due to any causes including, but not limited
           to, social, psychological, genetic, physical, chemical
13         or biological; and

14         2.  The illness has a primary diagnosis that either is
           listed in the American Psychiatric Association's
15         Diagnostic and Statistical Manual of Mental Disorders,
           Third Edition-Revised, or falls within diagnostic codes
16         290 through 319 in the International Classification of
           Diseases, 9th Revision.

17
   Id.
18
19         The Plan's claims administrator, VPA, must make the

20  determination of Total Disability on the basis of "objective

21  medical evidence," which the Plan defines as "evidence establishing

22  facts or conditions as perceived without distortion by personal

23  feelings, prejudices or interpretations." AT at HP00355.  It is the

24  member seeking benefits who is "solely responsible for submitting

25  the claim form and any other information or evidence on which the

26  Member intends the Claims Administrator to consider in order to

                                    4

1  render a decision on the claim."  AT at HP00375.

2      Where a claim for benefits is denied, the Plan provides that

3  the member is permitted to appeal the denial by submitting a

4  written request for review.  AT at HP00377.  With respect to an

5  appeal of a denial of benefits, the Organization "is the named

6  fiduciary which has the discretionary authority to act with respect

7  to any appeal from a denial of benefits.  The Organization's

8  discretionary authority includes the authority to determine

9  eligibility for benefits and to construe the terms of the Plan."

10  Id.

11      Upon appeal of a denial of benefits, the claims administrator

12  must "give the claimant (or the claimant's representative) an

13  opportunity to review pertinent documents . . . in preparing a

14  request for review."  Id.  The Plan provides, however, that the

15  claimant is "solely responsible for submitting a written request

16  for review of the claim and any other information or evidence on

17  which the Member intends the Claims Administrator to consider in

18  order to render a decision on review."  AT at HP00377.  The claims

19  administrator may require the claimant to seek additional

20  information or evidence as it deems appropriate to its review.  Id.

21      The Plan provides that, absent special circumstances, a

22  request for review should be "act[ed] upon" "within sixty (60) days

23  after the receipt thereof," and "[i]n no event shall the decision

24  of the Claims Administrator be rendered more than one hundred

25  twenty (120) days after it receives the request for review."  AT

26  at HP00378.  The Plan further provides that a claimant should

1  receive written notice of a denial of the appeal and the specific
2  bases for denial.  It also provides, however, that, absent written
3  notice that additional time for review is required, "within sixty
4  (60) days of the date his or her request for review is reached by
5  the Claims Administrator, the claim shall be deemed to have been
6  denied on review."  Even where a claimant is given notice that
7  additional time is required for review, the Plan provides that
8  where the claimant "does not receive written notice of the Claims
9  Administrator's decision with respect to his or her claim within
10 one  hundred  twenty  (120)  days  after  the  date  the  Claims
11 Administrator receives the request for review, the claim shall be
12 deemed to have been denied."  AT at HP00379.

13     Should the claimant wish to file suit regarding the denial of
14 benefits, the Plan provides that the claimant must first exhaust
15 the so-called administrative remedies set forth in the Plan.  AT
16 at HP00379.  The Plan also contains a time limitation for bringing
17 suit.  It provides that "[N]o action at law or equity shall be
18 brought to recover benefits under the Plan unless the action is
19 commenced within four (4) years after the occurrence of the loss
20 for which the claim is made."  Id.  The Summary Plan Description
21 provides plan members with information concerning the exhaustion
22 requirement and the limitations for suit.  It reads: "No legal
23 action may be taken until all the claim review procedures have been
24 completed.  No legal action may be taken to gain benefits from the
25 Plan after four years from when the disability occurred."  AT at
26 HP00441.

**B.    Plaintiff's Benefits Claim**

On August 19, 1996, plaintiff filed her initial claim for STD benefits under the Plan.  She described her disability as anemia, hysterectomy, and stress.  In the Physician's Certification of Disability, her doctor explained that plaintiff's primary diagnosis was iron deficiency and anemia, and listed "chronic immune deficiency fatigue syndrome" as a secondary diagnosis.  Plaintiff was awarded short-term benefits.

On February 27, 1997, plaintiff filed a claim for long-term disability benefits in which she listed a number of symptoms including nausea, muscle and joint pain, stress, chronic bronchitis, headaches, anxiety, depression, and panic attacks.

The VPA denied plaintiff's claim for LTD benefits by letter dated May 14, 1997.  In the letter, Dee Goodenough, a VPA employee with the title "Disability Benefit Specialist," addressed the limitations on disability claims based on mental health issues and chronic fatigue syndrome.  She then asserted that the objective medical records supported that plaintiff was being treated for chronic fatigue syndrome, fibromyalgia, depression, and chronic bronchitis, but did not support a limitation in function due to these conditions.  Goodenough concluded that, in her opinion, the objective medical evidence in the file did not support any limitation in function.  She also stated that, as to the diagnosis of fibromyalgia, the medical records contained no supporting data that plaintiff's symptoms were the result of an organic impairment. Goodenough noted that plaintiff had a right to request review, and

1  informed plaintiff that she would receive a written decision within

2  120 days of the date of her request for review.  Goodenough also

3  noted that if plaintiff did not receive a written decision within

4  120 days, "the appeal can be considered denied."  AT at HP00067.[3]

5      In a letter dated June 10, 1997, plaintiff appealed the denial

6  of benefits, alleging that she was disabled due to fibromyalgia,

7  chronic fatigue syndrome, immune deficiency syndrome, pulmonary

8  problems, and depression.  She stated that she was appealing on the

9  basis that her fibromyalgia, pulmonary problems, and immune

10 deficiency syndrome were disabling.  Def's AT at HP00062-63.[4]

11     On July 1, 1997, copies of the Plan were sent to plaintiff's

12 attorney, along with most of plaintiff's medical records.  VPA

13 informed plaintiff's counsel that any additional information

14 plaintiff wished to submit should be submitted within 30 days.  AT

15 at HP00005-6, 00061.  On July 24, 1997, plaintiff's attorneys

16 requested additional time to acquire additional medical

17 documentation to support her appeal.  VPA agreed to extend the

18 appeal submission date another thirty days to September 3, 1997.

19 VPA sent copies of additional medical reports to plaintiff's

20 _____

21     [3] There is no evidence that Ms. Goodenough has any meaningful
   training justifying her making the evaluation that defined

22 plaintiff's right to LTB.  This absence would seem enough in and
   of itself, in a rational system, to suggest that the determination
   was arbitrary and capricious

23

24     [4] The failure to provide counsel will all the relevant records
   is at least suggestive that VPA had not examined all the pertinent

25 information. In any event it would appear that the defendant had
   the duty to explain the failure and in the absence of explanation

26 there is a second suggestion of arbitrary decision  making.

8

1  counsel on August 11, 1997, and gave plaintiff until September 8,

2  1997 to submit her information.  On September 18, 1997, plaintiff's

3  counsel sent VPA a copy of a report from Dr. Agresti dated

4  September 16, 1997, and stated that an additional report would be

5  forthcoming.  The following day, in a telephone conversation with

6  Lance Tomei of VPA, plaintiff's counsel stated that it might take

7  another month to schedule plaintiff for a medical evaluation.  On

8  October 3, 1997, plaintiff's counsel sent a letter to Tomei

9  purporting to "memorializ[e] our agreement that the appeal review

10 . . . will not conclude until such time as Ms. LaMantia has

11 obtained a report from an evaluator of her choice and submitted

12 said report." AT at 000414.  Plaintiff's counsel wrote that he

13 hoped to obtain the report in two months.[5]

14     Whether plaintiff's counsel continued to communicate with VPA

15 over the next three years is in dispute.  In any event, it is

16 undisputed that in August of 2000 VPA received a letter from

17 plaintiff's current counsel asking for a response to materials that

18 plaintiff's counsel had allegedly sent in 1999.  VPA responded that

19 they had not received the materials and asked for copies, along

20 with an explanation as to why there had been a delay between

21

22 _____

23     [5]    Part of the problem in many ERISA cases, including this
   one, is that the time limits imposed by the administrator in the
   plan ignores the fact that many physicians are busy treating
24 patients and view writing reports as a distraction from their
   primary duty.  Of course this observation is inapplicable to
25 physicians who are hired by the plan to evaluate claimants and
   thus, as to those examined, the physicians have no treating
26 obligations.

9

1  October 1997 and 1999.[6]

2      It was another year before VPA sent a letter to plaintiff's

3  counsel stating that her appeal was denied.  Claims Manager, Janet

4  Curry, explained:

5          The medical file in question does not support Ms.
           LaMantia's functional ability was limited to the point
6          of precluding performance of sedentary or light work
           based on chronic bronchitis and fibromyalgia as of May
7          9, 1997.  The symptoms alleged are those of depression,
           chronic fatigue syndrome, and Epstein Barr virus and in
8          the absence of these symptoms, she could return to her
           job at Hewlett-Packard Company.  As the objective
9          medical evidence and Plan limitations in file do not
           support Ms. LaMantia's total disability based on the
10         Plan definition as of May 9, 1997, we have no
           alternative other than to reaffirm our decision to deny
11         benefits beyond the initial 39 weeks.

12  AT at HP00011.[7]

13  **C.   Procedural History**

14      The procedural history of this case is protracted and

15  unsatisfactory.  On two occasions this court's resolution of a

16  motion for summary judgment has been reversed by the Ninth Circuit

17  because of intervening changes in the law.

18      Plaintiff filed suit on October 17, 2001.  On December 20,

19  2002, this court determined that the VPA improperly denied

20  plaintiff long term disability benefits resting on the then

21  _____

22      [6] The reason that plaintiff's counsel did not provide an
    explanation may be inferred from its correspondence to VPA
23  suggesting that the lack of communication was the administrator's
    fault rather than plaintiff's.  Plaintiff's counsel had been under
24  the belief that VPA had received the material sent in 1999.

25      [7] Once again there is no indication that Ms. Curry has any
    expertise justifying her ability to evaluate the contents of the
26  file.

10

applicable "treating doctor" rule.[8]  Defendant appealed.  While the

case was pending the Supreme Court rejected application of the rule

in ERISA cases.  See Black & Decker Disability Plan v. Nord, 538

U.S. 822 (2003).  On March 23, 2005, the Ninth Circuit reversed and

remanded.  See Lamantia v. Voluntary Plan Administrators, Inc., 401

F.3d 1114 (9th Cir. 2005).

        Although clearly all that was necessary was citation to Black

& Decker, the Circuit did not stop there but went on to opine that

the Plan at issue gave VPA "'the discretionary power to construe

the language of the Plan and make the decision on review,' so the

abuse of discretion standard would normally apply." LaMantia, 401

F.3d at 1123 (citing Firestone Tire and Rubber Co. v. Bruch, 489

U.S. 101, 115 (1989)).  That panel concluded:

> By exercising its discretion and allowing material to be
> filed after the deemed-denial period when the claimant is
> requesting the extension, the claims administrator should
> not be subjected to the more scrutinizing de novo standard
> of review . . . Otherwise, claims administrators would have
> no incentive to allow extensions beyond the deemed-denial
> period when claimants seek an extension because they would
> be subject to de novo review.

Id. at 1123 -1124 (internal citations omitted).  As will become

clear, the first Ninth Circuit opinion, when read in conjunction

with the second opinion discussed below, creates serious questions

as to this court's obligations.

---

[8] Under that rule, the opinions of a claimant's treating physician was given special deference and could only be disregarded for clear and convincing reasons based on substantial evidence in the record.  See Regula v. Delta Family-Care Disability Survivorship Plan, 266 F.3d. 1130 (9th Cir. 2001), vacated 539 U.S. 901 (2003).

1    In any event, this court did its duty upon the first remand,

2 and reviewed the parties' summary judgment motions consistent with

3 the Ninth Circuit's instructions.

4    On August 18, 2005 this court ruled on the parties' cross

5 motions for summary judgment and per the Circuit's instruction,

6 reviewed the administrator's decision for abuse of discretion.  The

7 court found in favor of defendant.  Given the deferential standard

8 of review, this court reasoned that VPA was within its discretion

9 to deny benefits:

> [P]laintiff's physicians' statements concluded that her
> condition precluded her from working, but never explained what
> objective medical evidence supported those conclusions.
> Similarly, defendant made a specific request to Dr. Argesti to
> provide it with the specific information that was missing, and
> Dr. Argesti failed to respond.  Following <u>Jordan</u>, it was
> reasonable for defendant to render Dr. Argesti's conclusory
> statements less reliable. . . [D]efendant also had before it
> medical evidence casting the diagnoses of the alleged
> debilitating conditions into question.  Finally, the terms of
> the Plan made it clear that it was plaintiff's burden to
> produce objective medical evidence of a Total Disability.  As
> in <u>Jordan</u>, given the method of analysis mandated, this court
> cannot conclude that it was unreasonable for defendant to deny
> her application for LTD benefits on the basis that she failed
> to prove that she was completely unable to work at any job for
> which she was or could become qualified for.

19 August 18, 2005 Order at 28.  Plaintiff appealed the court's

20 decision granting defendant's motion.  Once again a change in the

21 law intervened.

22    The day before oral argument on plaintiff's appeal, the Ninth

23 Circuit issued an opinion in <u>Abatie v. Alta Health & Life Ins. Co.</u>,

24 458 F.3d 955 (9th Cir. 2006)(en banc).  In light of <u>Abatie</u>, the

25 Ninth Circuit remanded the pending case.  In the remand order, the

26 court explained:

> Abatie states that abuse-of-discretion review is merited, in almost all cases, when the plan confers sufficient discretion to the plan administrator.  This court has held that the Plan [at issue in the pending case] sufficiently vests such discretion.

LaMantia v. Hewett-Packard Company, No. 05-17744, 2006 WL 2634697 (9th Cir. Sept. 14, 2006)(citing to LaMantia v. Voluntary Plan Adm'rs, Inc., 401 F.3d 1114, 1123 (9th Cir.2005)). Nevertheless in remanding the case, the court determined that "[b]ecause Abatie creates such a significant shift in the analysis and because of the district court's ability to conduct fact finding beyond the administrative record, the district court should apply Abatie in the first instance."  LaMantia, No. 05-17744, 2006 WL 2634697 (9th Cir. Sept. 14, 2006).

It is difficult for this court to understand its duty in light of the Circuit's acknowledgment on the one hand that the plan vested discretion in the administrator, and the Circuit's assertion that this court has the power to conduct "fact finding beyond the administrative record," on the other.  It may be that the Circuit, in suggesting that this court "apply Abatie in this first instance," was directing this court to examine whether under Abatie a less deferential review was appropriate.

As best it can, this court now reviews the parties' cross motions consistent with the Ninth Circuit's instructions.

## II.

### STANDARDS

Summary judgment is appropriate when it is demonstrated that

13

there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>See also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Secor Limited v. Cetus Corp</u>., 51 F.3d 848, 853 (9th Cir. 1995).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See</u> <u>id.</u> at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u>

1   at 323.

2      If the moving party meets its initial responsibility, the
3   burden then shifts to the opposing party to establish that a
4   genuine issue as to any material fact actually does exist.
5   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
6   586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,
7   391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

8      In attempting to establish the existence of this factual
9   dispute, the opposing party may not rely upon the denials of its
10  pleadings, but is required to tender evidence of specific facts in
11  the form of affidavits, and/or admissible discovery material, in
12  support of its contention that the dispute exists. Fed. R. Civ. P.
13  56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l Bank,
14  391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.
15  1998).  The opposing party must demonstrate that the fact in
16  contention is material, i.e., a fact that might affect the outcome
17  of the suit under the governing law, Anderson v. Liberty Lobby,
18  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of
19  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)
20  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
21  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,
22  i.e., the evidence is such that a reasonable jury could return a
23  verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see
24  also Cline v. Industrial Maintenance Engineering & Contracting Co.,
25  200 F.3d 1223, 1228 (9th Cir. 1999).

26     In the endeavor to establish the existence of a factual

1   dispute, the opposing party need not establish a material issue of

2   fact conclusively in its favor.  It is sufficient that "the claimed

3   factual dispute be shown to require a jury or judge to resolve the

4   parties' differing versions of the truth at trial."  First Nat'l

5   Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.

6   Thus, the "purpose of summary judgment is to 'pierce the pleadings

7   and to assess the proof in order to see whether there is a genuine

8   need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

9   Civ. P. 56(e) advisory committee's note on 1963 amendments); see

10  also International Union of Bricklayers & Allied Craftsman Local

11  Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir.

12  1985).

13       In resolving the summary judgment motion, the court examines

14  the pleadings, depositions, answers to interrogatories, and

15  admissions on file, together with the affidavits, if any.  Rule

16  56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

17  (9th Cir. 1999).  The evidence of the opposing party is to be

18  believed, see Anderson, 477 U.S. at 255, and all reasonable

19  inferences that may be drawn from the facts placed before the court

20  must be drawn in favor of the opposing party, see Matsushita, 475

21  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

22  655 (1962) (per curiam)); See also Headwaters Forest Defense v.

23  County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).

24  Nevertheless, inferences are not drawn out of the air, and it is

25  the opposing party's obligation to produce a factual predicate from

26  which the inference may be drawn.  See Richards v. Nielsen Freight

1  Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d

2  898, 902 (9th Cir. 1987).

3       Finally, to demonstrate a genuine issue, the opposing party

4  "must do more than simply show that there is some metaphysical

5  doubt as to the material facts. . . . Where the record taken as a

6  whole could not lead a rational trier of fact to find for the

7  nonmoving party, there is no 'genuine issue for trial.'"

8  Matsushita, 475 U.S. at 587 (citation omitted).

9                              **III.**

10                            **ANALYSIS**

11 **A.   The Significance of Abatie**

12      The Abatie ruling is significant in several ways.  First, the

13 decision clarifies that abuse of discretion review is required

14 whenever "an ERISA plan grants discretion to the plan

15 administrator, but a review informed by the nature, extent, and

16 effect on the decision-making process of any conflict of interest

17 that may appear in the record." Abatie, 458 F.3d at 967.  This

18 standard applies to the kind of inherent or structural conflict of

19 interest that exists when an insurer acts as both the plan

20 administrator and funding source for benefits, without any

21 additional requirement that the claimant come forth with "smoking

22 gun" evidence of the administrator's motives. Id. at 967-69.[9]

23

24      [9] This apparent limitation on the scope of examination for
   conflict seems extremely crabbed.  Obviously, plans are not
   eleemosynary organizations.  They are paid for acting as an
25 administrator, and must have in mind that too liberal a granting
   of long term disability benefits may cause its employer to seek
26 administration elsewhere.  How to account for this reality has not

1     The Abatie decision also addresses what standard of review
2 district courts should apply when administrators fail to follow
3 procedural requirements of ERISA.  Id. at 971.  Citing to its own
4 decision in Gatti v. Reliance Standard Life Ins. Co., 415 F.3d 978,
5 985 (9th Cir 2005), the court clarified that when "an administrator
6 engages in wholesale and flagrant violations of the procedural
7 requirements of ERISA, and thus acts in utter disregard of the
8 underlying purpose of the plan as well, we review de novo the
9 administrator's decision to deny benefits." Id. at 981.  As an
10 example of a flagrant violation, the court described the
11 administrator's actions in Blau v. Del Monte Corp., 748 F. 2d 3d
12 1349 (9th Cir. 1984).  There, the administrator kept the policy
13 details secret from the employees, offered the employees no claims
14 procedure, and did not provide the employees in writing the
15 relevant plan information; "in other words, the administrator
16 'failed to comply with virtually every applicable mandate of
17 ERISA.'" Abatie, 458 F.3d at 971 (quoting Blau, 748 F. 2d at 1353).
18     Finally, the Abatie decision also clarifies what standard of
19 review to apply when there is evidence of procedural irregularities
20 that cannot be characterized as flagrant or wholesale violations of
21 ERISA.  Id. at 972.  The Abatie decision instructs that procedural
22 errors are relevant to a court's analysis:

23
24 been addressed in the cases.  Because of that, nothing in the
   instant record reflects whether HP has in the past changed
   administrators, if so what reasons were given, the fees paid VPA
25 and other facts which might bare on the issue.  Of course it is not
   for the court to determine what facts the parties believe are
26 relevant.

> A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion . . . When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity. . . . A more serious procedural irregularity may weigh more heavily.

Id. at 972. (internal citations omitted). Importantly, the Abatie decision also provides that:

> Even when procedural irregularities are smaller . . .and abuse of discretion review applies, the court may take additional evidence when the irregularities have prevented full development of the administrative record. In that way the court may, in essence, recreate what the administrative record would have been had the procedure been correct.

Id. at 973. The court turns next to the question of what standard of review to apply in the instant case.

**B.    The Appropriate Standard of Review in Light of Abatie**

At the outset, it is important to note that the Abatie decision, while significant, has a limited scope. Abatie addresses the proper standard of review in light of either conflicts of interest or procedural errors. The Abatie decision does not, however, alter how courts determine if procedural errors exist in any given case.

It is also important to acknowledge that the Ninth Circuit in its first LaMantia opinion determined that there was no conflict of interest. While the most recent remand order requires that Abatie be applied in the first instance, it does noting to suggest that the Circuit's first opinion relative to a conflict is subject to

1   further review.  The court thus assumes that it is bound by the

2   first LaMantia opinion and, where, as here, the Ninth Circuit has

3   already found that VPA was not acting under a conflict of interest,

4   there is no occasion to revisit this finding in light of Abatie.[10]

5        Plaintiff   argues   that   there   were  flagrant  procedural

6   violations of ERISA and therefore, the court should review de novo

7   VPA's decision to deny plaintiff's long-term disability benefits.

8   Reviewing the record, however, the court cannot conclude that the

9   administrator engaged in "wholesale and flagrant violations of the

10  procedural  requirements  of  ERISA,"  which  would  justify  de  novo

11  review.    See  Abatie  at  971.    The  court  briefly  addresses

12  plaintiff's arguments.

13       Plaintiff first maintains that VPA's final denial of her LTD

14  claim was inconsistent with its initial denial.  Citing to Lang v.

15  LTD Plan of Spinsor Applied Remote Tech. Inc., 125 F.3d 794 (9th

16  Cir. 1977), plaintiff avers that review should be de novo when a

17  plan administrator gives one reason for the initial denial and then

18  changes reasons in the final denial.  See Pl.'s Mot. for Summ. J.

19  at 10.

20

21       [10] Although at one point plaintiff claimed there was a
    conflict of interest, in its August 18, 2006 order, this court
22  specifically found that there was no conflict of interest.  See
    August 18, 2006 order at 18.  The Ninth Circuit, in its recent
23  remand order, also found that the plan at issue in this case
    confers sufficient discretion to the plan administrator.  In short,
24  under present standards, and the present record, there is no
    structural conflict of interest present in this case.  For this
25  reason, Abatie's holding with respect to the standard of review
    when the administrator labors under a conflict of interest is not
26  relevant.

1        The record does not support plaintiff's contention.  VPA's

2   initial denial of plaintiff's LTD benefits noted that plaintiff was

3   "being treated for Chronic Fatigue Syndrome, Fibromyalgia,

4   depression and chronic bronchitis."  AT at HP 00066.   Dee

5   Goodenough, the Disability Benefit Specialist,[11] determined,

6   however, that although plaintiff did "have some of the classic

7   tender points to support this diagnosis [Fibromyalgia] there is no

8   supporting data to indicate your subjective symptoms are a result

9   of an organic impairment."  Id.   Accordingly, Ms. Goodenough

10  determined that:

11              Due to the lack of objective findings to support an
                organic basis for a limitation in function which would
12              preclude you from performing your occupation at
                Hewlett-Packard or any other sedentary occupations
13              outside of Hewlett-Packard Company, we have no
                alternative than to deny your claim as you do not satisfy
14              the definition of Total Disability as defined above.

15  AT at HP00066.  VPA's final denial of plaintiff's claims was no

16  different.  The Claims Manager, Janet Curry,[12] evaluated evidence

17  submitted by plaintiff and concluded that despite Dr. Agresti's

18  diagnosis of Fibromyalgia, he "provided no evidence of Ms.

19  LaMantia's functional level and fails to support [that] her

20  symptoms are related to other than depression, chronic fatigue

21  syndrome and Esptein barr virus."  AT at HP 00015.   Ms. Curry also

22  reviewed the report of an independent medical examiner, Dr. Wood.

23  Dr. Wood "did not believe that [plaintiff] has fibromyalgia as a

24  ──────────────────

25      [11] See footnote 3.

26      [12] See footnote 7.

1  clinical entity...[and] the diagnosis of fibromyalgia is

2  unwarranted." <u>Id.</u>  Accordingly, Ms. Curry concluded:

> The medical file in question does not support Ms. LaMantia's functional ability was limited to the point of precluding performance of sedentary or light work based on chronic bronchitis and fibromyalgia as of May 9, 1997. The symptoms alleged are those of depression, chronic fatigue syndrome, and Epstein Barr virus and in the absence of these symptoms, she could return to her job at Hewlett-Packard Company.  As the objective medical evidence and Plan limitations in file do not support Ms. LaMantia's total disability based on the Plan definition as of May 9, 1997, we have no alternative other than to reaffirm our decision to deny benefits beyond the initial 39 weeks.

10  AT at HP00011.  Without passing judgment on whether VPA's reasons

11  for the denials were an abuse of discretion, the court finds that

12  the reasoning for both denials was essentially the same:  the

13  medical evidence did not support a finding that plaintiff suffered

14  from any limitation in function that might render her totally

15  disabled as that term is defined in the Plan.

16     While plaintiff is correct that the denial of plaintiff's

17  appeal mentioned an additional alleged symptom, the Epstein Barr

18  virus, these disabilities were discussed as being alleged symptoms

19  that were part of the record.  There was no discussion of whether

20  plaintiff was in fact disabled due to these conditions.  <u>See</u> AT at

21  HP00011.   In this regard it is important to note that the

22  definition of "total disability" under the Plan specifically

23  excludes these conditions, therefore, any statement regarding them

24  cannot serve as a basis for granting the LTD claim.[13]

25  _____

26     [13] Plan § 2(q)(i), defines Total disability to specifically provide that a member suffering from a mental illness meets the

1   The conclusion of both findings were essentially the same:

2  there was insufficient evidence that plaintiff suffered from

3  Fibromyalgia.   There was no significant variance between the

4  initial denial and the final denial. Therefore, this alleged error

5  does not constitute a "wholesale and flagrant violation[] of the

6  procedural requirements of ERISA."   Abatie at 971.

7   Plaintiff also makes several arguments that were previously

8  presented to this court.  Richardson v. United States, 841 F.2d 993

9  (9th Cir.1988).  It is well established that "[u]nder the 'law of

10  the case' doctrine, a court is ordinarily precluded from

11  reexamining an issue previously decided by the same court, or a

12  higher court, in the same case."[14] Id. at 996.  The court now turns

13  to plaintiff's other contentions.

14   First, plaintiff maintains that the VPA did not issue a timely

15  decision.  See Pl.'s Mot. for Summ. J. at 11.  Both this court and

16  the Ninth Circuit have already rejected this argument.   In the

17  _____

18  definition of "Total Disability" "only if he or she is confined to
a hospital or other licensed long term care facility for the
treatment of such disability or has been so confined for fourteen

19  (14) or more consecutive days during the preceding three (3)
months." Curry Decl. Ex. A, HP 00356. Because Plaintiff was never

20  confined to a "hospital or other long term care facility" for the
treatment of her depression, that depression is a condition

21  expressly excluded from the definition of "Total Disability." Id.

22   [14] The remand order states that "the district court should
apply Abatie in the first instance." Clearly this language might

23  suggest that the court should disregard its prior rulings premised
on a narrower scope of review and essentially start from scratch.

24  However, in the context of the rest of language of the remand
order, it seems reasonable to conclude that the Circuit is

25  suggesting that if, upon analysis, Abatie changes the standard of
review, the district court is in the best position to conduct fact

26  finding beyond the record.

1  first remand order, the Ninth Circuit concluded that it was

2  plaintiff who was responsible for the delay:

3        [B]y allowing more medical information to be filed past
       the deemed-denial period when the claimant makes such a

4        request, and by subsequently rendering a decision on the
       merits, VPA exercised its discretion. By exercising its

5        discretion and allowing material to be filed after the
       deemed-denial period when the claimant is requesting the

6        extension, the claims administrator should not be
       subjected to the more scrutinizing de novo standard of

7        review.

8  LaMantia, 401 F.3d at 1123.  This Court took note of the Ninth

9  Circuit's decision and found that VPA did not issue an untimely

10 final decision:

11       Plaintiff first asserts that a less deferential standard
       should apply because defendant acted in bad faith when it

12       failed to render a timely decision of her appeal of the
       denial of long-term disability benefits.  The Ninth

13       Circuit has already addressed this issue and foreclosed
       this argument.  The panel determined that the delays in

14       making a final determination on plaintiff's appeal were
       not a result of defendant's bad faith because it was

15       plaintiff "who sought an extension of time which caused
       the deadline to file documents to occur beyond the

16       deemed-denial date."  LaMantia at 1123.

17 August 18, 2005 Order, at 15-16.  Plaintiff presents no compelling

18 reason as to why the court should upset its prior ruling on the

19 matter.  Similarly, plaintiff presents no legal authority for why

20 the court should view the timing of the VPA's decision as evidence

21 of a "flagrant" procedural error.

22       Second, plaintiff avers that VPA "went doctor shopping." Pl.'s

23 Mot. for Summ. J. at 12.  Again, the court already addressed this

24 very argument in its August 18, 2005 order:

25       Plaintiff next argues that defendant acted in bad faith
       because the VPA arranged for her to be evaluated by more

26       than one doctor.  According to plaintiff, this

24

> demonstrates that the VPA "acted more as an advocate for denial, than a fair and impartial third party looking to make the right decision." This argument is unsupported by any legal authority and is less than convincing. Nothing in the record supports a finding that the independent medical examinations were impermissible.

August 18, 2005 Order, at 16.   The <u>Abatie</u> decision offers no additional guidance or insight into how to analyze the issue of whether VPA was "doctor shopping." Even if the court were to have second thoughts on its prior order, the law of the case doctrine prevents this court from revisiting its prior ruling.   Because <u>Abatie</u> does not alter how the court should analyze this particular issue, there is no basis for the court to revisit its prior ruling.

Third, plaintiff argues that VPA wrongfully evaluated her eligibility for long-term disability benefits as of May 1997, at the end of the Plan's 39 week short-term disability period, instead of August 1997, at the end of the 52 week period.   <u>See</u> Pl.'s Mot. for Summ. J. at 14.   In its August 18, 2005 order, the court rejected this identical argument:

> In any event, plaintiff was in no way prejudiced by defendant's evaluation of her application at the end of the 39 week period rather than after 52 weeks.  there is no indication that any new documents were available at the end of the 52 week period that were not available at the end of the 39 week period.  Therefore, any procedural error committed by defendant was harmless, since waiting an additional 13 weeks to assess plaintiff's status would have been inconsequential.
>
> More importantly, VPA's initial assessment has no bearing on the larger issue now before the court, that is, whether or not VPA's ultimate denial of benefits was an abuse of discretion. The final determination of her long-term application was not made until August of 2001, which included a review of plaintiff's medical reports from September 1997 to 1999. Accordingly, the medical reports reviewed by VPA were not limited to those dated

before May 1997, as claimed by plaintiff.

August 18, 2005 Order, at 20.  Plaintiff fails to present any reason as to why, in light of <u>Abatie</u>, this alleged error should be construed as a flagrant error warranting de novo review.  There is simply no reason for the court to revisit its prior finding that any procedural error was harmless.

Plaintiff also asserts that VPA failed to include two letters in the administrative record.  The letters at issue were written by Dr. Agresti and Dr. Herman in June of 1997.  Without deciding whether or not this omission constitutes a flagrant procedural error, the court notes that it did in fact review these two letters in its August 18 order.  <u>See</u> August 18, 2005 Order at 22.  Having reviewed these two letters, along with the rest of the record, this court still concluded that VPA did not abuse its discretion in denying benefits.  <u>See</u> August 18, 2005 order at 28.

Plaintiff's final two arguments are that VPA failed to adequately investigate the claim and that VPA failed to credit plaintiff's reliable evidence when it determined that she was not editable for LTD benefits.  <u>See</u> Pl.'s Mot. for Summ. J. at 15 & 17. Both of these arguments are, in fact, disagreements with VPA's decisions on the merits, not VPA's procedures.  Any procedural irregularity plaintiff cites within these arguments is minor.

For these reasons, the court finds that there were no "wholesale and flagrant violations of the procedural requirements of ERISA" which would require de novo review.  <u>Abatie</u>, at 971-972

(explaining that "when a plan administrator's actions fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted.") Under <u>Abatie</u>, abuse of discretion remains the proper standard of review.

Plaintiff also appears to argue that, at the very least, the above cited violations should be considered procedural irregularities, if not flagrant errors. <u>Abatie</u> explains:

> A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion . . . When an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity. . . A more serious procedural irregularity may weigh more heavily.

<u>Abatie</u>, at 972 (internal citations omitted). In the case at bar, the Ninth Circuit, in its first remand order in 2005, specifically addressed the issue of "good faith." In the remand order, the Ninth Circuit discussed at some length its own decision in <u>Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan</u>, 349 F.3d 1098, 1103 (9th Cir. 2003). In <u>Jebian</u>, the court addressed when a court applies de novo review and explained that an exception which would warrant deference is when the plan administrator "is engaged in a good faith attempt to comply with its deadlines." <u>Id.</u> The Ninth Circuit concluded that the <u>Jebian</u> "good faith" exception applied to the circumstance in the case at bar. The Circuit explained that there was:

> good faith communication between the claims administrator and the claimant.  There were letters and telephone conversations between VPA and LaMantia's counsel beginning several weeks before the deemed-denial date that led to extensions of time, all of which were at the request of LaMantia to enable her to file additional medical information.

LaMantia v. Voluntary Plan Administrators, Inc., 401 F.3d 1114, 1123 (9th Cir. 2005).  For this reason the Ninth Circuit concluded that the Jebian exception warranted deferential review in the pending case.

Nothing in Abatie suggests that this court should reexamine the Ninth Circuit's conclusion that there was "good faith" communication as defined by the Jebian case.  Moreover, this court noted in its August 18, 2005 order:

> The Ninth Circuit has already addressed this issue and foreclosed this argument.  The panel determined that the delays in making a final determination on plaintiff's appeal were not a result of defendant's bad faith because it was plaintiff 'who sought an extension of time which caused the deadline to file documents to occur beyond the deemed-denial date.'

August 18, 2005 order, quoting LaMantia v. Voluntary Plan Administrators, Inc., 401 F.3d 1114, 1123 (9th Cir. 2005).  In short, on previous occasions, the Ninth Circuit concluded that defendant did not act in bad faith which would justify de novo review.  In light of these findings and per Abatie's instruction, this court "should give the administrator's decision broad deference notwithstanding a minor irregularity."  Abatie at 972. Accordingly, the court reviews the denial of plaintiff's claim for abuse of discretion, while also taking into account any minor

1  irregularities.

2  **C.    Abuse of Discretion Standard**

3       In assessing whether a claim administrator abused its
4  discretion, the court considers whether the claim denial was
5  unreasonable. <u>Clark v. Washington Teamsters Welfare Trust</u>, 8 F.3d
6  1429, 1432 (9th Cir. 1993).  ERISA plan administrators abuse their
7  discretion when they "construe provisions of the plan in a way that
8  conflicts with the plain language of the plan." <u>Eley v. Boeing Co.</u>,
9  945 F .2d 276, 278 (9th Cir.1991).  An abuse of discretion will
10  also be found if the administrator relies on clearly erroneous
11  findings of fact in making benefit determinations, <u>Taft v.</u>
12  <u>Equitable Life Assur. Soc.</u>, 9 F.3d 1469, 1473 (9th Cir. 1993), or
13  the decision is unsupported by substantial evidence.  <u>Johnson v.</u>
14  <u>District 2 Marin Eng'rs. Beneficial Ass'n.</u>, 857 F.2d 514, 516 (9th
15  Cir. 1988).

16  **D.    Denial of Plaintiff's Claim**

17       Having determined that in light of <u>Abatie</u>, abuse of discretion
18  is the proper standard of review in this case, the court finds no
19  reason to reconsider its August 18, 2005 order.  In its August 18
20  order, the court concluded that VPA did not abuse its discretion in
21  denying plaintiff LTD benefits.  Citing <u>Jordan v. Northrop Grumman</u>
22  <u>Corp. Welfare Benefit Plan</u>, 370 F.3d 869 (9th Cir. 2004), the court
23  explained:

24              As in <u>Jordan</u>, plaintiff's physicians' statements
                concluded that her condition precluded her from working,
25              but never explained what objective medical evidence
                supported those conclusions.  Similarly, defendant made
26              a specific request to Dr. Agresti to provide it with the

29

1                        specific information that was missing, and Dr. Agresti
                       failed to respond. Following Jordan, it was reasonable

2                        for defendant to render Dr. Agresti's conclusory
                       statements less reliable. Finally, defendant also had

3                        before it medical evidence casting the diagnoses of the
                       alleged debilitating conditions into question . . . The

4                        terms of the Plan made it clear that it was plaintiff's
                       burden to produce objective medical evidence of a Total

5                        Disability. As in Jordan, given the method of analysis
                       mandated, this court cannot conclude that it was

6                        unreasonable for defendant to deny her application for
                       LTD benefits on the basis that she failed to prove that

7                        she was completely unable to work at any job for which
                       she was or could become qualified for.

8 August 18, 2005 Order at 28.  Applying Abatie, and weighing any

9 minor procedural irregularities and the merits of VPA's decision,

10 the court is again unable to conclude that VPA abused its

11 discretion or was arbitrary and capricious in denying plaintiff's

12 claim for long-term disability benefits.

13       Finally, the court addressees plaintiff's claim that the court

14 consider additional evidence outside of the administrative record.

15 See Pl.'s Mot. for Summ. J. at 19.  Plaintiff requests that the

16 court review an August 23, 2002 report by Dr. Agresti and a follow

17 up report dated June 22, 2005.     Abatie instructs that,

18       Even when procedural irregularities are smaller . . .and abuse

19       of discretion review applies, the court may take additional
      evidence when the irregularities have prevented full

20       development of the administrative record. In that way the
      court may, in essence, recreate what the administrative record

21       would have been had the procedure been correct.

22 Id. at 973.  The court must determine, therefore, if under Abatie

23 it is appropriate to review these records.

24       Defendant properly points out that both of these reports post-

25 date VPA's final denial of plaintiff's LTD claim (which was issued

26

1  on August 24, 2001) and therefore, they could not have been part of
2  the administrative record.  Plaintiff, however, argues that since
3  the reports pertain to her condition at the time of the denial, it
4  is not relevant that they are dated after the final denial date.
5  This argument, while initially compelling, is problematic when
6  drawn out to its logical conclusion.  Clearly, a case cannot remain
7  open and unresolved.  A line must be drawn somewhere.  Abatie
8  provides that courts may "recreate what the administrative record
9  would have been had the procedure been correct." Abatie, at 973.
10 As this court reads Abatie, only those records which could have
11 been part of the administrative record may be reviewed.  Therefore,
12 a court may not consider records which were created after the date
13 of the decision to deny benefits.

14     The two reports at issue here were both written after August
15 24, 2001, the date VPA issued its decision denying plaintiff's
16 claim.  Accordingly, these two reports could not have been part of
17 the administrative record and may not be reviewed by the court.

18                              **V.**

19                           **CONCLUSION**

20     1.   Plaintiff's Motion for Summary Judgment is DENIED.

21     2.   Defendant's Motion for Summary judgment is GRANTED.

22     IT IS SO ORDERED.[15]

23

24     [15] It seems plain that this result does not accord with simple
   justice.  If the court were able to look at the two excluded
   reports it seems clear that the plaintiff is entitled to long term
25 benefits.  If this court has misread the effect of the new law I
   urge the Court of Appeals to award plaintiff the benefits and not
26 return the case to this court for yet another decision and appeal.

31

1    DATED: February 12, 2007.

2

3

4    LAWRENCE K. KARLTON
     SENIOR JUDGE
5    UNITED STATES DISTRICT COURT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26